## In re McFARLAND's Estate, KENNEDY's Appeal.

Allowance by administrators to agents of more than one-third of a claim on the government of the United States, sustained under the circumstances.

Administrators may pay a just debt of their decedent, though barred by the statute of limitations.

Letters to the decedent may be read by administrators, to show the information on which they acted, in making an agreement with an agent respecting a claim on the government of the United States.

The estate of the decedent having been sold at an Orphans' Court sale, the administrator is chargeable with the amount of the bid, although the purchaser refused to take without conveyances from remainder-men, whom the administrator agreed to com pensate out of the purchase money, the decedent having but a life-estate.

$550 allowed as compensation in the settlement of an estate, where the credits amounted to $10,060, and the disbursements to $9642.

APPEAL from the Orphans' Court of Washington county.

*Oct. 28.* The facts of this case are principally stated in the opinion of the court, by his honour COULTER, J., to which a few facts are here added. Upon a reference to auditors of the accounts of the administrators of McFarland, several exceptions were made thereto, and to the report of the auditors. The decedent held a claim on the government of the United States; the character of which, and the circumstances attending its recovery, are particularly stated in the opinion of the court. After his death, the *heirs* of the decedent executed an instrument, requesting the administrators to appoint A. Wilson their agent, to employ attorneys to collect the claim, which was therein stated to be $12,000, and authorizing him to give such a portion of the same for the collection thereof, as he thought proper. By articles between the administrators and Wilson, it was stipulated, that the latter should receive one-third of the amount recovered, and if the whole sum claimed was recovered, then $1000 in addition. Wilson appointed Mahon and Washington his attorneys, and showed their receipts for $4000. The decedent had employed Stambaugh as his attorney in the matter, under an agreement to receive ten per cent.; this was paid him by the administrators. The total amount received for the claim was - $12,000 but of which they paid Wilson, including the amount

| | | |
|---|---|---|
| paid Mahon and Washington, | - - - | $5000 |
| Stambaugh, | - - - - - - - | 1200 |
| | | 6200 |

They charged themselves with the balance, $5800

With respect to the payment to Ann McFarland; it was proved by

N 2

disinterested witnesses, that the decedent, her brother, had boarded with her many years before his death, had used a room in her house as a store, sold her hay, &c., and that she advanced money to pay the expenses of a journey to Washington to bring him home, in his last illness.    At the time of the audit, her account was in part barred by the statute, but whether it was so at the time it was paid by the administrator, the record furnished no means of ascertaining; the opinion of the court here assumes that it was.    The letters objected to as evidence were used to show the difficulties attending the collection of the claim on the government.

Another ground of exception arose, in the following manner.  The decedent was entitled to an estate for life, in certain lands.  The administrator, under the impression that he had the fee, procured an Orphans' Court sale.  The purchaser objecting to the title, the administrator procured the remainder-men to join in relinquishing their title to the purchaser: this was done by some of them, under an express stipulation with one of the administrators for a payment of part of the purchase money to them. The administrators sought to withdraw so much, from the amount charged against them for the Orphans' Court sale, as was believed to be due to these remainder-men.

The auditors reduced the claim for compensation from $700 to $550, the credit side of the amount being $10,060, and the debit $9642 composed of upwards of eighty items.

The court confirmed the report of the auditor, with the exception of the allowance for a payment to the remainder-men out of the price bid at the Orphans' Court sale, which was refused.

*Hamilton* and *Woods*, for the appellants.

*McKennan*, for the administrators.—The administrator could not bind the estate by such a contract.   Vandever's Appeal, 8 Watts & Serg. 409.   It was but a personal contract binding on himself only. As to the letters, there can be no bill of exception in a proceeding before an auditor.   The documents were read there, to show the circumstances under which the administrators acted, in making the arrangement with Wilson ; it was from them the character and situation of the claim was learned.

*Oct. 31.   Coulter, J.*—The principal exception to the account is, that the administrators did not charge themselves with the whole amount of money received from the United States' government, for depredations committed by the Winnebago Indians, on the property of the deceased.

McFarland had presented the claim in his lifetime, for a period

of many years; sometimes before the Winnebago chiefs in council; sometimes before the officers of the United States government, and sometimes before Congress. He had been often repulsed, and shortly before his death, the head of the Indian bureau had decided against the claim. At the time he contracted the illness, of which he died, he was at Washington city, clinging to a claim, rendered, no doubt, more interesting to him by the time, expense, and trouble expended in its prosecution. After his death, his administrators found among his papers, evidence evincive of the doubts and difficulties which hung over the frail prospect of success. Like many other claims of the kind, it had been pursued by the deceased, by just means and unremitted diligence, until even hope was worn away under the exhaustion of fruitless exertion. The administrators, however, made, as they believed, a final effort in an urgent appeal to the head of the Indian bureau, accompanied by the advocacy and assistance of their representative in Congress. But he reiterated his rejection, accompanying that rejection with his written reasons of disallowance, under any and every aspect in which it was presented.

Here the administrators might, unquestionably, have stopped and allowed the matter to rest. They were not bound to prosecute it before Congress, or the chiefs of the Winnebagoes. They had not the command of judicial or other process to enforce payment from either; although justice with the light of sunbeams might illustrate its equity. It was beyond the range, and without the pale of their duties. And if they had looked no further after the matter, they would have been absolved from either legal censure or accountability on this account.

In this posture of affairs, the heirs suggested to the administrators the employment of Wilson, a near relative of the deceased, as an agent, with full power to prosecute and employ attorneys. Wilson accordingly was employed, who engaged the services of Messrs. Mahon and Washington as attorneys, under an arrangement, that if they were successful in bringing the claim to a successful issue at their own expense, they were to have one-third, and Wilson was to get $1000. The result showed the tact with which Wilson selected his attorneys, for, as if by a mere turn of the wheel of fortune, an allowance of the claim was obtained from the head of the Indian bureau, and the money paid. After retaining the amount of compensation due them by the contract, the attorneys paid over the balance to the administrators, who charged themselves with the amount. Under all the circumstances of the case, this court think it would be unjust and not required by law to charge the adminis-

trators with the amount paid to agents and attorneys, and thus en-
force on them, in their private capacity, the burden of collecting this
desperate claim.

The amount allowed is not greater, but less, than prudent and
wise men often have given for the prosecution of claims to success,
under auspices far more favourable than those which opened to the
administrators in this case.

The exception made to the allowance by the administrators of the
claim of Ann McFarland, a sister of the deceased, is not sustained.
It is admitted and proved that the deceased lived with his sister and
kept a store in her house, and that he sold the produce of her lots.
The account presented to the administrators, like all other accounts,
was verified by the oath of the creditor. It does not appear that
there was any suggestion by any person interested, that there was
any thing questionable in the claim. The creditor is of admitted
respectability. The administrators resided in the neighbourhood,
were well acquainted with the family, and in all probability were
well informed as to all the circumstances upon which it was founded.
Why then should they refuse payment, and encumber the estate with
lawsuits? But it was alleged that the claim was barred by the
statute of limitations. Administrators are not compelled to plead
the statute; and in this case, if they had done so, would have pro-
bably violated justice, as well as their own convictions of right.

It was also objected to the decree of the court, that the auditors
had received in evidence the letters of Thomas H. Crawford, the
chief of the Indian bureau, to McFarland, in his lifetime, and to
his administrators after his death; as also the letters of successive
members of Congress who represented the district in which the de-
ceased resided in his lifetime. It was not denied that these letters
were genuine. Auditors do not proceed according to the strictest
rules of evidence. The *apicis juris* is dispensed with, and they
endeavour to ascertain truth more in the manner of courts of
chancery. It is well they do so—no harm. is produced, and often
good. At any rate, this court cannot entertain a bill of exceptions
to evidence admitted by them.

There is an exception to that charge which the administrators
make against themselves on account of the sale of real estate, situ-
ate in Alleghany county, made in pursuance of an order of Orphans'
Court, on the ground that John McFarland had but a life-estate
in the premises, and that a title could not be made to the purchaser,
until Teeple, one of the administrators, engaged to procure releases
from the heirs or those in remainder, and that he promised to pay

Lewis McFarland, and Mrs. McClure, two of those in remainder, each $300, which ought to be deducted out of the sum for which the land sold by the administrators, and be held by them as the trustees of the said Lewis McFarland and Mrs. McClure. I intimate no opinion as to the transaction between these individuals or their agreements; that matter not being before the court. But the administrators properly charged themselves with the whole amount of the sale. The rule of *caveat emptor* applies to sales made under a decree of the Orphans' Court; and after a sale is confirmed by the court, the purchaser is bound for the amount of his bid, which may be recovered from him by the administrator, as was determined by this court at this term, in the case of King *v.* Gunnison, page 171. The administrators, therefore, having lawful right to collect the money, were bound to charge themselves with the full amount of the sale.

The amount allowed by the court to the administrators for their time, expenses and trouble, does not, under the circumstances, appear extravagant. There were some other exceptions which do not appear to have weight.

Decree of the Orphans' Court affirmed.